IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. JULIE WILLIAMS, et al.,<br><br>Plaintiffs<br><br>v.<br><br>RENAL CARE GROUP, et al.,<br><br>Defendants. | NO. 3:09-00738<br>JUDGE HAYNES |

## MEMORANDUM

Plaintiff, Julie Williams as relator, filed this action[1] under the False Claims Act, ("FCA"). 31 U.S.C. §§ 3729 through 3733 against the Defendants: Fresenius Medical Care Holdings, Inc. ("FMCHI"), Renal Care Group ("RCG"), the former parent corporation of the RCG Supply Company ("RCGSC"). FMCHI is the successor-in-interest to RCG and RCGSC. Defendant RCG provided dialysis supplies to patients with end-state renal disease ("ESRD") at RCG facilities. Defendant RCGSC supplied dialysis equipment to patients who receive dialysis treatment at their homes. Defendants RCG and RCGSC submit claims for payment for these services and supplies to the Medicare program. The United States later intervened and the Relator non-suited her claims without prejudice.

The United States's FCA claims are that RCGSC's claims for payment from the Medicare program between 1999 and 2005 for home support dialysis supplies were in violation of Medicare statutes and regulations because RCG, a dialysis facility, actually created, controlled and operated RCGSC, a dialysis supplier. RCG's control rendered RCGSC ineligible to receive

---

[1]This action was filed originally in 2005 in the Eastern District of Missouri and was later transferred to this District in 2009. (Docket Entry No. 188).

higher payments from Medicare for the sales of certain dialysis supplies for home dialysis treatment under an express Medicare statute.

In earlier proceedings, the United States moved for partial summary judgment (Docket Entry No. 165), on two elements of count one and on its unjust enrichment claims in count six of its first amended complaint. The United States contended, in sum, that the undisputed facts for count one established RCGSC was not a legitimate or qualified supplier to submit claims for the higher payment under Medicare's "Method II" payment scheme for sellers of certain dialysis equipment for Medicare patients' home use. For its unjust enrichment claim, the United States asserted that because RCGSC failed to meet the statutory and regulatory conditions for the higher Method II payment from the United States's Medicare program, RCG and RCGSC received more Medicare funds than they were eligible to receive. According to the United States, Medicare pays up to an additional 30% to firms that sell dialysis supplies and equipment for dialysis treatment at the patient's home. Congress expressly prohibits the higher payments for sales of such equipment by inpatient treatment facilities.

Defendants RCG and RCGSC also moved for summary judgment (Docket Entry No. 204) on all Government claims asserting, in essence, that Medicare officials knew of RCG's corporate structure and a Medicare official informed RCG's attorney that RCGSC's role as a supply company for RCG's patients was legal. In addition, Defendants cited Medicare's payments of RCG's and RCGSC's claims for more that six years as evidence of RCGSC's compliance with the applicable Medicare rules. Defendants also referred to the widespread industry practice for such related companies as well as their counsel's legal advice that RCG relied upon in establishing RCGSC. Defendants contended that they lacked any fraudulent intent and did not

make any false representations that were material to their claims for Medicare payments. For these same reasons, Defendants argued that the United States's common-law claims of mistake and unjust enrichment were barred because if the United States were correct, then the Government's sole remedy is for breach of contract precluding any claim for equitable relief.

Based upon its findings of fact,[2] and relevant legal authorities, the Court concluded that with "the clarity of the applicable Medicare statutes, their legislative history, and relevant Medicare regulations, . . . the Defendants exhibited reckless disregard of those legal mandates. The Defendants cannot effectively set aside those commands by their cited interactions with Medicare officials. The Defendants in some respects failed to heed the advice of their counsel to maintain RCGSC as a separate office." (Docket Entry No. 263, Memorandum at 18). The Court also found that "under . . . the Medicare statues and regulations. . . . [and] the facts giving rise to the creation of RCGSC clearly demonstrate to the Court that RCG's creation, operation and control of RCGSC was to receive the higher Method II payments." Id. at 19-20. Thus, RCG's proof of their disclosures to a Medicare counsel and reports did not bar Defendants' FCA liability. The Court noted that if the Medicare statutes or regulations at issue were unclear and ambiguous, the Defendants' proof on their contacts and disclosures would be probative on the United States's FCA claim. Id. at 17.

Thus, the Court "conclude[d] that the United States is also entitled to recover on its unjust enrichment claim." Id. at 20. The remedy ordered required the Defendants to return the net

---

[2]Under applicable law and the parties' factual submissions, the Court concluded that there were not any material factual disputes. From the Court's perspective, the parties' purported factual disputes were actually challenges to the probative value and effects of undisputed facts. Thus, the Court made findings of fact under Fed. R. Civ. P. 56(d) that the Court reaffirms.

reimbursement of RCGSC's Method II claims during 1999-2005 minus the amount of Method I payments for the same time period. The United States's calculation of this difference was nineteen million three hundred sixty-six thousand seven hundred five dollars ($19,366,705) that represented a 22.5 % higher payment for analysis product for home treatment. Id. at 20-21.

The day after the Court's ruling, the Defendants filed a notice of appeal. The United States filed a motion for an indicative ruling (Docket Entry No. 270) to clarify for appellate purposes whether the March 22nd Order granted summary judgment on all elements of count one of the United States's first amended complaint or alternatively whether the Court's March 22nd Order was a Final Order. The Defendants objected to the United States's motion, but the Court granted the motion explaining that because the United States sought a judgment only on its unjust enrichment claim, the Court mistakenly believed that the United States had elected to seek judgment for damages on its unjust enrichment claim over its other claims for damages. The Court also stated that absent this belief, summary judgment would have been awarded on the United States's other claims, including treble damages and penalties. The Court noted that these awards would subsume the unjust enrichment award. The Sixth Circuit remanded the action for lack of jurisdiction and dismissed Defendants' appeal.

Before the Court is the United States's second motion for partial summary judgment (Docket Entry No. 284) and the Defendants' motion for reconsideration (Docket Entry No. 288) of the Court's earlier ruling. At a hearing on these latter motions, the parties agreed that the United States's motion is actually for summary judgment on all of its remaining claims.

In its second motion for summary judgment, the United States seeks a judgment on the merits of all of its claims, but only an award of damages and penalties on its FCA claims in count

one of its amended complaint. The United States cites the Court's prior factual findings as supported by the record and justifying an award of summary judgment. The United States also argues that under the applicable law, the proof of damages does not require proof of mathematical precision, and Defendants' admissions during discovery on the amount of their Method II payments establish the appropriate amount of damages.

In their motion for reconsideration of the Court's earlier Order and Memorandum and in opposition to the United States's second motion for partial summary judgment, the Defendants assert, in essence: (1) that Defendants' intent was not raised in the United States's earlier motion and Defendants were not on notice that the Court would rule on whether the Defendants' possessed the requisite intent or reckless disregard under the FCA; (2) that summary judgment is inappropriate on the issues of intent or reckless disregard under the FCA; (3) that Defendants are entitled to a jury trial on all damages issues; (4) that material factual disputes exist on the amount of actual damages; (5) that an award based upon total Medicare reimbursement fails to recognize the value of the products Defendants provided to the United States and Defendants' receipt of Medicare funds for other services; (6) that the United States relies on Defendants' damages calculation that was only a projection; (7) that the United States erroneously assumes that 30% difference for Method I and Method II Medicare payments is the actual measure of damages; (8) that the number of Defendants' Medicare claims is a materially disputed fact; (9) the near maximum penalties sought by the United States are inappropriate and would violated the excessive fines clause of the Eighth Amendment; and (10) the Court's ruling failed to consider certain facts that create material factual disputes.

In reply, the United States responds, in sum: (1) that the Defendants moved for summary

judgment on all issues thereby presenting the intent and reckless disregard issues under the FCA for resolution; (2) that the United States's motion for partial summary judgment presented the issue of Defendants' intent and reckless disregard on Count One, its FCA claim; (3) that Defendants admitted the amount of damages sought by the United States; and (4) that among the Defendants' discovery responses were that Defendants could not calculate damages based on Method II payments and those responses preclude the existence of any material factual disputes on damages.

Of the parties' motions, the Court addresses first the Defendants' motion to reconsider and its various contentions and proof. (Docket Entry No. 289-1 through 9).

## A. Defendants' Motion to Reconsider

### 1. Defendants' Notice of Ruling on Intent or Recklessness

In their motion to reconsider, the Defendants' first challenge whether the issues of intent and/or recklessness were presented in the earlier motions for summary judgment so as to give prior notice of the Court's ruling on those issues. The United States's first motion for partial summary judgment expressly stated that "the issues of materiality and falsity . . . can be resolved on the basis of undisputed facts in the record." (Docket Entry No. 165 at 1). Defendants' memorandum in support of their motion for summary judgment asserted, inter alia, that Defendants are entitled to summary judgment on Government's counts one and two because RCG and RCGSC did not knowingly submit false statements based upon "undisputed evidence" about Defendants' belief of the legality of its business. (Docket Entry No. 204 at 2, 6). Defendants' supporting memorandum contains more than seventeen (17) pages of undisputed facts on whether the Defendants "knowingly" presented false or fraudulent claims to the

Government for counts one through four under the FCA. (Docket Entry No. 212 at 2-20). For these contentions, the Defendants also submitted extensive evidence, as reflected in Defendants' annotated statement of undisputed facts totaling 313 separate paragraphs citing exhibits and deposition testimony. See Docket Entry No. 224-2. At the hearing on the parties' motions for summary judgment, the Defendant's counsel stated: "If there is ever a case that we're entitled to summary judgment on the elements intent of a False Claims Act case, this is one of them." (Docket Entry No. 262 at 57). Defense counsel reiterated that summary judgment on all FCA claims was appropriate. Id.

As set forth in the Court's earlier Memorandum on the governing principles on summary judgment motions, once the Defendants moved summary judgment on all claims with substantive evidence, the United States had the burden to present sufficient "evidence . . . that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Government submitted substantial proof on both motions for summary judgment. (Docket Entry Nos. 168-3 through 168-43; 224-1 through 224-8; 229 through 229-8; 230 through 232; and 243-1 through 243-7). The Defendants then filed a reply with additional exhibits (Docket Entry Nos. 237-1 through 237-4, 239, and 240-1 through 240-3). The Defendants also submitted substantial proof in response to the Government's motion for partial summary judgment. (Docket Entry Nos. 203-1 through 203-109 and 211-1 through 211-3).

In these circumstances, the Court concludes that by the nature of their motions, the Defendants' assertions in their memoranda and at oral argument, the United States and the Defendants were on actual notice that all elements of the Government's FCA claims were before the Court for summary disposition. As stated in the Court's Memorandum, specific proof of

Defendants' intent is not required under the FCA. (Docket Entry No. 263, Memorandum at 14) (quoting 31 U.S.C. § 3729(b)(5)).

## 2. Appropriateness of Summary Judgment on FCA Claims

Notwithstanding their earlier motion for summary judgment on all claims, Defendant now contend that FCA claims are inappropriate for resolution by summary judgment. Yet, the Sixth Circuit has affirmed summary judgment awarded on FCA claims. United States ex rel Compton v. Midwest Spec., Inc., 142 F.3d 296 (6th Cir. 1998). This Court has also awarded summary judgment on FCA claims based upon the defendant's ineligibility to receive government payments at issue. United States ex rel Wall v. Circle C Construction Co., 700 F. Supp. 2d 926, 930 n.2, 939-40 (M.D. Tenn. 2010). Although the filing of cross-motions for summary judgment do not preclude a material factual dispute, cross-motions for summary judgment may be probative of the absence of any factual disputes. See United v. States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984). "[T]he fact that non-moving party has not filed its own summary judgment motion does not preclude the entry of summary judgment, if otherwise appropriate." Shelby County Healthcare Corp. v. Southern Council of Indus., 203 F.3d 926, 932 (6th Cir. 2000) (quoting K.E. Resources Ltd. v. BMO Fin., Inc., 119 F.3d 409, 412 (6th Cir. 1997)).

The Defendants' principal defense was the "[k]nowledge of government officials" of the Defendants' business structure, but such facts do not "automatically exonerate" Defendants' FCA liability, as the Sixth Circuit explained in United States v. Medshares Management Group, Inc., 400 F.3d 428, n.21 (6th Cir. 2005). Here, an express statute, 42 U.S.C. § 1395rr (b)(1) precludes inpatient dialysis treatment providers from participation in the sale of home dialysis equipment that has up to a 30% higher premium for the dialysis equipment. This statute clearly states:

"**Payments under this subchapter** with respect to services, ...furnished to individuals who have been determined to have end stage renal disease **shall include ... (C) payment to a supplier of home dialysis supplies that is not a provider of services,[or] a renal dialysis facility ...**". Id. (emphasis added). The Secretary's regulations under this statute, 42 C.F.R. § 414.33(a)(2)(i) and (b)(2), provide:

> (a)(2) (i) the patient elects to obtain home dialysis equipment and supplies from a supplier that is not a Medicare approved dialysis facility.
>
> \* \* \*
>
> (b) Support service - -
>
> Exceptions - **If a patient elects to obtain home dialysis equipment and supplies from a supplier that is not an approved ESRD facility**, Medicare pays for support services, other than support services furnished by military of VA hospitals. . . .

(emphasis added). See also Docket Entry No. 263, Memorandum at 14-16 (citing other statutes and their legislative history).

Based upon the undisputed facts previously found by the Court, RCG, a dialysis facility treatment provider, was the actual supplier of the home dialysis equipment sold to RCGSC's patients. The Court earlier found, in summary: that RCG's president managed RCGSC; RCG provided RCGSC's payroll, insurance and email services; RCGSC shared offices with RCG without a lease; RCGSC's funds were daily deposited into RCG's account; RCG paid RCGSC's supply vendors; and RCGSC supplied only RCG patients. (Docket Entry No. 263, Memorandum at 4-5, 9). RCG's internal documents reveal that RCG was in fact RCGSC. Id. at 5-8. The Court concludes Defendants' proof of contacts with some Medicare officials does not entitle the Defendants to receive the Method II's higher rate of pay render summary judgment appropriate.

The Defendants' earlier insistence that the undisputed facts entitled them to summary judgment reveals an award of summary judgment was appropriate. "[T]he fact that non-moving party has not filed its own summary judgment motion does not preclude the entry of summary judgment, if otherwise appropriate." Shelby County Healthcare, 203 F.3d at 932.

### 3. Existence of Material Factual Disputes and the Necessity for a Jury Trial on Damages

Defendants next cite to the United States's failure to file a statement of its undisputed facts under Local Rule 56.01 on the issue of intent, but the Defendants did file such a statement to which the United States responded. Id. In this context, the issues of intent and reckless disregard were specifically presented and there is not any violation of Local Rule 56.01.

As to material factual disputes, Defendants cite a material dispute about the measure of damages and the number of claims subject to recovery under the FCA. Defendants deny the United States's calculation of the net reimbursement to Defendants under Method II. In its earlier ruling, the Court accepted the Government's calculation of damages that did not assume a full 30% under the Medicare statute, but rather submitted 22.5% as the average rate of higher premiums for the years at issue. The Court accepted that estimate as a reasonable approximation of damages. (Docket Entry No. 263, Memorandum at 21) (citing Docket Entry No. 168-43 at 13).

As to the Defendant's motion to reconsider on these issues, in their responses to the United States's request for admissions, the Defendants stated: "Defendants do admit that a reimbursement difference has existed between Method I and Method II during 1999 to 2005," id. at 7, and citing their March 17, 2009 letter, also admitted that "based on our numbers, the

differential for the supply companies under CCPD [the dialysis equipment at issue] would be $12,957,864." Id. at 13.

Summary judgment can be awarded based upon party's response to a request for admission. Quasius v. Schwan Food Co., 596 F.3d 947, 949, 952 (8th Cir. 2010). Moore's Fed. Practice § 36.02[2]. In Midwest Specialities, Inc, the Sixth Circuit affirmed an award of summary judgment and damages on a FCA claim. 142 F.3d at 299, 304-05. In Circle C, an FCA action, this Court awarded the contract price or total sum paid to a defendant that was ineligible to receive payment in a federal program. 700 F. Supp. 2d at 940.

"[O]rdinarily the proper damages in a FCA case is the difference between what the government actually paid out by reason of the false claim over and above what it would have paid had the government known the true facts." Id. (quoting United States v. Estate of Rogers, 2001 WL 818160, at *32 (E.D. Tenn. June 28, 2001) (doctor misappropriating someone else's Medicare number)). Based upon the Defendants' admissions, the undisputed facts are the Defendants' net illegal payments from Medicare's higher Method II payments is $12,957,864.

As other evidence of material factual disputes, Defendants submitted the affidavits of Gary Burkardt and Donna Hughes with several exhibits and Defendants' responses to interrogatories in support of their motion to reconsider. (Docket Entry No. 203-2 and 203-28). Hughes's damage calculation was cited and submitted in the Government's earlier motion for summary judgment. See Docket Entry No. 168-43 at 13. The deposition or affidavit of these defense witnesses was submitted on the earlier motions for summary judgment. Much of the materials in these supplemental affidavits appear to be duplicative of earlier evidentiary submissions. In any event, the $12,957,864 award is consistent with Hughes's supplemental

11

affidavit and Hughes's lower figure in that affidavit directly contradicts her earlier analysis. See Docket Entry No. 168-43 at 13.

To challenge an award of summary judgment, the appropriate procedure is a motion under Fed. R. Civ. P. 59(e) or a motion to reconsider that is treated as a Rule 59 motion. Huff v. Metro Life Ins. Co., 675 F.2d 119, 122 (6th Cir. 1982). Evidence that should and could have been presented when the parties' motion for summary judgment was pending cannot be considered on a motion to reconsider. Basinger v. CSX Transp., Inc., 91 F.3d 142, 1996 WL 400182, at *2 (6th Cir. July 16, 1996) (and authorities cited therein). Defendant also cannot create a material factual dispute on a motion to reconsider by submitting conflicting evidence that contradicts their earlier submissions. See Medical Mut. of Ohio v. K. Amalia Enterprises, Inc., 548 F.3d 383, 394-95 n.8 (6th Cir. 2008). Moreover, "[p]iecemeal presentation of summary judgment issues is inappropriate." Id.

There is not any justification why this information in the supplemental Brukardt and Hughes affidavits were not submitted on the earlier motions for summary judgment. Much of the materials (Docket Entry No. 203-1 through 203-9) appear to be duplicative of earlier evidentiary submissions. To the extent of any variance exists, this historical data was previously available and should have been presented on the earlier motions for summary judgment. This "[p]iecemeal presentation of summary judgment issues is inappropriate." Medical Mut. of Ohio, 548 F.3d at 394-95 n.8. Thus, the Court declines to consider this supplemental evidence that was clearly available for submission on the earlier motions for summary judgment. To the extent the United States seeks a higher amount of actual damages, material factual disputes exist for which summary judgment is inappropriate.

As the appropriate measure for an award of statutory penalties under 31 U.S.C. § 3729(a), the United States cites the number of patients for whom Defendants received the higher premium under the Method II program. The Defendants RCGSC presented 4,960 claims for Method II payments, but the Defendants contend this number is a projection, not actual numbers of payments or claims. Defendants also state that RCGSC actually submitted only one claim for each patient for one year and RCGSC billed four federal centers once a month for all patients and supplies. Thus, Defendants assert that the appropriate measure for any penalty is the number of claims for payment for these sales.

From the Court's review, in their responses to the United States's requests for admissions, the Defendants' "admitted" that the number of RCGSC's patients for which Method II payment claims were submitted were as follows for the years at issue:

| Year | Count |
|---|---|
| 1999 | 397 |
| 2000 | 452 |
| 2001 | 594 |
| 2002 | 718 |
| 2003 | 838 |
| 2004 | 980 |
| Total | 3979 |

(Docket Entry No. 168-43 at 4 through 7). At oral argument, the Defendants assert that from 2001 through 2005, Defendants had 2639 patients for whom Defendants were paid at the higher rate for CCPD equipment. For penalty purposes, the Court deems the earlier 3979 patients total

to be controlling for the reasons stated earlier in the damages discussion, namely that the Defendants' earlier admission on the number of its patients receiving the higher CCPD patient contracts controls. See supra at pp. 11-12.

As to penalties on the FCA claim, 31 U.S.C. § 3729(a) provides that for a FCA violation, the Defendant "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, **plus** hold 3 times the amount of damages which the Government sustains because of the act." (emphasis added). Yet, the award of treble damages and penalties under the FCA is limited by the Eighth Amendment's excessive fines clause. See United States v. Mackby, 339 F.3d 1013, 1016 (9th Cir. 2003).

As to the appropriate measure under the FCA for a penalty award, "the court must determine with what act did the defendant submit his demand or request and how many such acts were there? Thus, separate penalties are to be assessed for each request for payment, rather than for each false statement." United States ex rel. Augustine v. Century Health Services, Inc., 136 F. Supp. 2d 876, 895 (M.D. Tenn. 2000) (quoting and citing United States v. Krizek, 111 F.3d 934, 939-40 (D.C. Cir. 1997)). In Century Health, the FCA violations were submissions of cost reports.

Defendants argue that the relevant act for a penalty is the Defendants' submission for its billings to Medicare agencies for payments for such equipment, citing United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp., 2010 WL 3730894, at *3-*5 (D. Colo. 2010) (collecting conflicting district court cases). Yet, those submissions are compilations of equipment provided to individuals who are eligible for Medicare benefits.

In the Court's view, the issue of the relevant "act" for the "demand or request" should be

14

considered in the context of the goods or services at issue. Medicare pays claims only for equipment provided to an "eligible individual." See 42 U.S.C. § 1395x, 1395b-3 1395w-21 and 1395w-28. Here, Defendants provided dialysis products to eligible "individuals who have been determined to have end stage renal disease." 42 U.S.C. § 1395rr(b)(1). As the Sixth Circuit observed "[u]nder the Medicare regulatory regime, service providers are paid "the reasonable cost of services <u>provided to beneficiaries</u>." Medshares Management, 400 F.3d at 456 (quoting 42 C.F.R. § 413.64(a)) (emphasis added). In an action under the False Claims Act, the Supreme Court stated:

> To equate the number of forfeitures with the number of contracts would in a case such as this result almost always in but a single forfeiture, no matter how many fraudulent acts the subcontractor might have committed. This result would not only be at odds with the statutory language; it would also defeat the statutory purpose.

<u>United States v. Bornstein</u>, 423 U.S. 303, 304, 311 (1976); <u>see also</u> <u>United States ex rel. Kreindler & Kreindler v. United Technologies Corp.</u>, 985 F.2d 1148, 1157 (2d Cir. 1993).

Thus, the Court concludes each patient for which Defendants' demanded payment represents the appropriate basis for the award of penalties under the FCA. Thus, the "act" related to the "demand or request" that gives rise to Defendants' FCA violation is the Defendants' providing higher premium dialysis equipment to Medicare patients for home dialysis treatment. As in <u>Bornstein</u>, the Defendants' argument provides a financial inducement to limit the number of submissions for payment and thereby to limit FCA liability for civil penalties while conferring a financial benefit for a violation of the FCA.

Here, it is undisputed that from 1999 to 2005, Defendants submitted claims for payment for equipment to at least 3979 patients under the Method II program and made at least one claim

15

for each patient for each year. As cited below, criminal fines and civil penalties have been sought for the specific practice at issue here. Thus, the Court deems the $11,000 statutory penalty to be appropriate. Each sale represents the actionable act under the FCA for which a penalty of $11,000 is assessed for each patient for a total of $43,769,000. This penalty is not excessive for Eighth Amendment purposes, as the earlier estimates of the United States's actual damages was $19 million that was subject to trebling. Courts have approved larger criminal fines and civil penalties for the practice at issue here. See United States ex rel. Bander v. Gambro Healthcare U.S., 4:01-cv-00553-DDN, (Order approving $366.5 million settlement for similar practices involving use of a dialysis shell-company supplier for Method II payments) and United States v. Gambro Supply Corp., 4:04-cr-00660, Docket Entry No. 2, Information and Docket Entry No. 7, Plea Agreement (the supply company's plea agreement to liability for Method II charging of Medicare with an agreed $25,000,000 criminal fine).

For these collective reasons, the Court concludes that the Defendants' motion to reconsider should be granted to reduce the prior actual and untrebled damages award, but should otherwise be denied.

### 2. United States's Motion for Summary Judgment

For this motion, the Court incorporates by reference its earlier findings of fact and conclusions of law on counts one and six that apply with equal force to the United States's claims in counts two though five of its amended complaint. Thus, the Court awards actual damages of $12,957,864 on count one of the amended complaint that is trebled as a matter of law for a total damages of award of $38,873,592. Based upon at least one annual sale for each of Defendants' admitted 3979 patients to whom equipment was provided under the Method II

program and the $11,000 statutory penalty standard, the Court awards the United States $43,769,000 in statutory penalties for a total award of $82,642,592, as well as its costs in this action.

An appropriate Order is filed herewith.

**ENTERED** this the ___25th___ day of May, 2011.

                                         WILLIAM J. HAYNES, JR.
                                         United States District Judge